UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| AMANI ALBALUSHI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:26-cv-00176-SRC |
| | ) | |
| THE BOEING COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

**<u>Memorandum and Order</u>**

Albalushi claims that Boeing transferred her from one department—in which she received praise and benefits—to one with a discriminatory manager and team lead. For the next seven months after her transfer, her work life allegedly deteriorated until her termination. Albalushi alleges that this deterioration occurred because of her manager's and team lead's prejudice against her on the basis of her race, religion, and national origin. Albalushi filed suit in state court, and Boeing removed this case to this Court and filed a motion to dismiss. As discussed below, the Court denies the motion.

I.      **Background**

A.      **Factual Background**

The Court accepts the following well-pleaded facts as true for purposes of the motion to dismiss. Amani Albalushi is Muslim, and her country of national origin is Oman. Doc. 7 at ¶ 2. Boeing hired Albalushi in December 2021 in the accounts payable department. *Id.* at ¶ 10. She "was given positive feedback, praise, and commensurate raises based on her successful performance." *Id.* at ¶ 12. In September 2023, Boeing transferred her to the accounts receivable department. *Id.* at ¶ 10. Her new manager "unfairly scrutinized" the work that Albalushi and

1

other employees of color performed, resulting in Boeing's termination of "at least three other Boeing employees of color."  *Id.* at ¶ 15.

Albalushi's team lead and manager "permitted Caucasian employees more lenient working conditions," such as extended lunch breaks and one-on-one training.  *Id.* at ¶¶ 16, 18, 20, 29.  Albalushi and other employees of color had to provide daily logs accounting for the hours they worked and the tasks they performed, while Caucasian employees did not.  *Id.* at ¶ 17. And when Albalushi asked questions, her manager "accused her of not working independently." *Id.* at ¶ 18.  Her team lead did not provide Albalushi help when requested, although the team lead and Albalushi's manager would let Caucasian employees ask questions or discuss concerns.  *Id.* at ¶¶ 18, 19.

Albalushi and other employees of color were given significantly less annual raises than Caucasian employees who were "performing the same work and had been performing such work for the same amount of time as [Albalushi]."  *Id.* at ¶ 21.  In 2024, Albalushi was placed on a performance development plan (PDP), because she was allegedly "not properly processing accounting errors."  *Id.* at ¶ 22.  But Boeing "did not have a mechanism [that] Plaintiff could use to correct the issue," effectively "penaliz[ing] [Albalushi] for not accomplishing a task that was impossible to accomplish."  *Id.*

While on the PDP, Albalushi was again denied access to one-on-one training, and never received "formal feedback or constructive criticisms on whether she was deficient in her progress."  *Id.* at ¶¶ 23, 24.  In violation of Boeing's PDP policy, no human resources employee met with Albalushi to discuss her lacking performance.  *Id.* at ¶ 25.  When Albalushi's PDP expired, her manager notified Albalushi that she did not improve, and either had to leave the

company or be placed on a performance improvement plan (PIP); Albalushi chose the latter. *Id.* at ¶¶ 26, 27.

Albalushi told her manager in November 2023 that she intended to return to Oman to celebrate Ramadan. *Id.* at ¶ 32. Shortly after notifying her manager of this, the manager gave Albalushi a significantly lower annual raise compared to her coworkers. *Id.* Her manager placed her on the PIP one week prior to her departure, "effectively prohibiting [her] from leaving for this religious celebration," which she claims "effectively denied [her] the ability to exercise her religious practices." *Id.* at ¶ 33. In violation of Boeing's internal policies, Albalushi was placed on this PIP without the opportunity to meet with someone from human resources to discuss her deficiencies. *Id.* at ¶ 28.

In December 2023 and January 2024, Albalushi submitted two complaints to Boeing's ethics department regarding her manager's "unfair and discriminatory treatment of herself and other employees of color." *Id.* at ¶¶ 30, 31. Albalushi avers that her team lead and manager "were aware of [her] race, nation of origin[,] and religious beliefs." *Id.* at ¶ 14. Boeing terminated Albalushi in April 2024. *Id.* at ¶ 35. Albalushi filed a Charge of Discrimination with the Missouri Commission on Human Rights, which issued Albalushi a right-to-sue letter in September 2025. *Id.* at ¶¶ 36, 37. Albalushi then sued Boeing, alleging three counts under the Missouri Human Rights Act for (1) race, religion, and national-origin discrimination, doc. 7 at ¶¶ 38–49, (2) a hostile work environment, *id.* at ¶¶ 50–58, and (3) retaliation, *id.* at ¶¶ 59–66.

**B.      Procedural Background**

Albalushi filed this suit in Missouri state court. *See* doc. 7. Boeing removed this case, doc. 1, and moved to partially dismiss Albalushi's claims, doc. 9. The Court now takes up Boeing's motion.

## II.      Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The pleading standard of Rule 8(a)(2) requires a plaintiff to give "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff." *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). But if a claim fails to allege one of the elements necessary to recover on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted. *See Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555. Nor does a "pleading that merely pleads 'labels and conclusions,' or a 'formulaic recitation' of the elements of a cause of action, or 'naked assertions' devoid of factual enhancement" suffice. *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Although courts must accept all factual

4

allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation.  *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 677–78.

Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 679.  Therefore, the Court must determine if the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id*.  This "context-specific task" requires the Court to "draw on its judicial experience and common sense." *Id*.

## III.    Discussion

Boeing moves to dismiss Albalushi's hostile-work-environment claim, doc. 7 at ¶¶ 50–58, and her race-based allegations both in that claim and in her race-discrimination claim, *id.* at ¶¶ 38–58, for failure to state claims upon which the Court can grant relief, doc. 10 at 2–5.  Fed. R. Civ. P. 12(b)(6) (The Court cites to page numbers as assigned by CM/ECF.).  For the following reasons, the Court denies Boeing's motion.

### A.    Albalushi states a claim in Count II for a hostile work environment under the Missouri Human Rights Act

Under the MHRA, "[t]he elements of a hostile work environment claim [are]":

(1) [The plaintiff] is a member of a group protected under the MHRA;

(2) [the plaintiff] was subjected to unwelcome harassment;

(3) the [plaintiff]'s membership in the protected group was a motivating factor in the harassment; and

(4) a term, condition, or privilege of the [plaintiff's] employment was affected by the harassment.

*Matthews v. Harley-Davidson*, 685 S.W.3d 360, 367 (Mo. 2024).  Boeing challenges Albalushi's hostile-work-environment claim, doc. 7 at ¶¶ 50–58, on the basis that she "fails to allege facts supporting the second and fourth elements," doc. 10 at 2–3.  Boeing argues that Albalushi's pleading "is devoid of any allegations sufficient to allege a hostile work environment," because

her "allegations center on ordinary workplace concerns such as time for lunch breaks, the requirement to prepare a log of her daily activities, and the quality of the training that she received for job responsibilities." *Id.* at 3.  And Albalushi does not allege that anyone used racial slurs, intimidated, threatened, or insulted her on the basis of race, religion, or national origin. *See id.* at 3–4.  Because Albalushi's "allegations center on ordinary workplace concerns and rudeness, she fails to state a claim for a hostile work environment," Boeing claims.  *Id.* at 4.

Regarding element two, Boeing argues that Albalushi "does not allege facts showing any harassment."  Doc. 10 at 3.  Harassment, Boeing argues, occurs when "the workplace [is] 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive.'"  *Id.* (emphasis removed) (quoting *Moore v. Sw. Bell Tel. Co.*, 684 S.W.3d 187, 207 (Mo. Ct. App. 2023)).

And regarding element four, Boeing argues that "'the harassing conduct must be severe and pervasive enough to create a hostile or abusive working environment as viewed subjectively by the claimant and as viewed objectively by a reasonable person.'"  Doc. 10 at 3 (cleaned up) (quoting *Young v. Mo. Dep't of Corr.*, 691 S.W.3d 815, 824 (Mo. Ct. App. 2024)).  Boeing notes that a court "must look at the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.*; *see also M.W. v. Six Flags St. Louis, LLC*, 605 S.W.3d 400, 412 (Mo. Ct. App. 2020)).

Albalushi spends most of her response claiming that Boeing's arguments are better addressed at the summary-judgment stage, doc. 13 at 4–5, before arguing briefly that her allegations, "[v]iew[ed] . . . in the light most favorable to [her] and drawing all

6

reasonable inferences in her favor, . . . fall within the pleading requirements and are sufficient to establish a claim for hostile work environment," *id.* at 6.  Under federal pleading rules, the Court must examine whether "a complaint . . . contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

So the Court examines Albalushi's pleaded facts for elements two and four.  A claimant "can show that harassment affected a term, condition, or privilege of her employment by showing a tangible employment action, or an abusive working environment." *Matthews*, 685 S.W.3d at 368.  "Examples of tangible employment actions include but are not limited to:  hiring and firing; promotion and failure to promote; demotion; undesirable reassignment; a decision causing a significant change in benefits; compensation decisions; and work assignments." *Hill v. Ford Motor Co.*, 277 S.W.3d 659, 666–67 (Mo. 2009) (quoting 8 C.S.R. § 60–3.040(17)(D)(4)), *superseded by statute on other grounds*, Mo. Rev. Stat. §§ 213.010(2), (19), *as recognized in Matthews*, 685 S.W.3d at 367 nn.4 & 6.

The Court examines elements two and four under the same facts.  *See Matthews*, 685 S.W.3d at 368–69 (discussing pervasive and harmful harassment when analyzing elements two and four); *Marcantonio v. Bd. of Curators*, 702 S.W.3d 153, 169–70 (Mo. Ct. App. 2024) (finding that a course of harassment and tangible employment actions suffice to show that harassment impacted a term or condition of employment).  And the Court finds that Albalushi pleads harassment that affects a term, condition, or privilege of employment.  Albalushi claims that her team lead and manager permitted Caucasian employees lenient working conditions, one-on-one training, and the opportunity to freely ask questions.  Doc. 7 at ¶¶ 16, 18, 19, 20, 29.  Albalushi and other employees were denied such opportunities, though Albalushi claims to have

7

repeatedly asked for them. *Id.* at ¶¶ 16, 18, 19, 23, 24. These facts can constitute harassment affecting a term, condition, or privilege of employment. *See Clark v. AT&T Mobility Servs., L.L.C.*, 623 S.W.3d 197, 205–06 (Mo. Ct. App. 2021) (finding that some employees receiving "additional training and extended breaks" was, in part, sufficient to meet elements two and four).

Albalushi alleges that she and other employees of color also had to provide daily logs accounting for the hours they worked and the tasks they performed, while Caucasian employees did not. Doc. 7 at ¶ 17. Albalushi also alleges being criticized for her work, despite not receiving formal feedback or constructive criticism. *Id.* at ¶¶ 22, 23, 24. She also alleges—twice—receiving lower annual raises than other employees. *Id.* at ¶¶ 21, 32. And Boeing ultimately fired Albalushi. *Id.* at ¶ 35.

Employment actions involving "a decision causing a significant change in benefits," "compensation decisions," and "work assignments" can create a hostile work environment. *See Marcantonio*, 702 S.W.3d at 169 (finding that an employer's failure to hire new associates, increasing the plaintiff's work, denying plaintiff additional compensation for the additional work, denying him personal leave, and providing unwanted negative reviews is "substantial evidence that he had been subjected to multiple tangible, adverse employment actions as part of a course of harassment"). On this record, the Court finds that Albalushi sufficiently pleads unwelcome harassment affecting a term, condition, or privilege of Albalushi's employment. *See Matthews*, 685 S.W.3d at 368–69; *Marcantonio*, 702 S.W.3d at 169–70; *Clark*, 623 S.W.3d at 205–06.

In saying so, the Court also remains mindful of this case's present posture. At the motion-to-dismiss stage, Albalushi need only plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 570).  And the Court grants her complaint a liberal construction at this posture, *Huggins*, 592 F.3d at 862, with all reasonable inferences granted in Albalushi's favor, *Lustgraaf*, 619 F.3d at 872–73 (A "petition" in Missouri state court serves as the analogue of a federal "complaint," and the Court uses the latter term.).

**B.  Albalushi sufficiently pleads facts about her race under counts I and II.**

Boeing next argues that "[m]embership in a protected class is a necessary element of" Albalushi's race-based MHRA claims in counts I and II.  Doc. 10 at 4 (citing *Johnson v. Westinghouse Air Brake Techs. Corp.*, 104 F.4th 674, 677–78 (8th Cir. 2024)).  Boeing claims that Albalushi "does not make *any* allegations regarding her race," and that she merely claims that "she is a member of a protected class based on her national origin . . . and based on her religion." *Id.* at 5.  Boeing claims that because Albalushi "never mentions her race, nor . . . connect[s] any of the alleged events to her race, . . . she has failed to state a claim related to her race under [c]ounts I and II." *Id.*

Albalushi relies on *Matthews v. Harley-Davidson*, in which the plaintiffs "alleged each appellant is Black (African American) or a Person of Color." 685 S.W.3d at 367 (citation modified).  The Missouri Supreme Court found that "[a]ppellants sufficiently pleaded they were members of a group protected under the MHRA." *Id.*  Boeing, in reply, cites *Hill v. MHM Support Services* for the proposition that "to state a claim related to race, [Albalushi] must 'articulate in her complaint what her race and color [are] . . . .'" Doc. 14 at 4–5 (citing No. 4:24-cv-00971-JAR, 2025 WL 252458, at *5 (E.D. Mo. Jan. 21, 2025), *appeal dismissed for lack of jurisdiction*, No. 25-1484, 2025 WL 1114012 (8th Cir. Mar. 14, 2025)).

Relying on its "judicial experience and common sense," the Court finds that Albalushi sufficiently pleads facts alleging race-based mistreatment. *Iqbal*, 556 U.S. at 679.  In various parts of her complaint, Albalushi describes facts alleging different treatment of her and "other

9

employees of color" compared with Caucasian employees. Doc. 7 at ¶¶ 16, 17, 21, 30. Based on this phrasing, the Court grants her the reasonable inference that she is also a person of color. *See Lustgraaf*, 619 F.3d at 872–73. And because the Missouri Supreme Court found in *Matthews*, at the motion-to-dismiss stage, that race-based allegations by "persons of color" "sufficiently pleaded" membership in "a group protected under the MHRA," 685 S.W.3d at 367, the Court finds that Albalushi has sufficiently pleaded the same, *see* doc. 7 at ¶¶ 16, 17, 21, 30, for her race-based claims in counts I and II. *See* doc. 7 at ¶¶ 38–58.

Boeing argues that *Matthews* is distinguishable, because "the defendant-employers did not dispute that the plaintiff-employees pleaded sufficient facts to satisfy this element, so the Court did not have to resolve a dispute over that issue." Doc. 14 at 5 (citing *Matthews*, 685 S.W.3d at 367). It notes that the "the plaintiffs alleged that they were each Black (African American) or a Person of Color who were subject to derogatory race-based comments, insults, and bullying because of their race, including nooses, swastikas, and racial slurs." *Id.* (cleaned up). So, "[v]iewing the allegations in that initial pleading as a whole, the Court had more than enough to conclude that the plaintiffs stated a claim for discrimination and harassment on the basis of race," Boeing claims. *Id.* But here, Albalushi "does not allege any facts about her race, nor does she allege facts regarding race-based comments, insults, bullying, or slurs." *Id.* Therefore, "[u]nlike the plaintiffs in *Matthews*, [Albalushi] does not state a claim under the MHRA for race-based discrimination or hostile work environment," Boeing states. *Id.* at 5.

But in *Matthews*, even though the parties did not dispute plaintiffs' satisfaction of this element, the court still found that plaintiffs' claims that they are Black or people of color was sufficient to "plead[] they were members of a group protected under the MHRA." *Matthews*, 685 S.W.3d at 367. The court then discussed the plaintiffs' allegations of "racial, derogatory

10

race-based comments, insults, and bullying by [defendants]," as Boeing notes, but did so to conclude that the plaintiffs "sufficiently pleaded that race was a motivating factor in the harassment." *Id.* at 367–68.  The Missouri Supreme Court did not use plaintiffs' allegations of comments and bullying to determine whether the plaintiffs pleaded membership in a protected group.  *See id.*

And Boeing's reliance on *Hill v. MHM Support Services* is misplaced.  *Hill* is a federal case regarding Title VII, *see* 2025 WL 252458, at *1; but "in diversity cases, federal courts must follow state law as announced by the highest court in the state," *Caldwell v. TACC Corp.*, 423 F.3d 784, 788 (8th Cir. 2005) (citation omitted).  The Court therefore follows the Missouri Supreme Court's analysis in *Matthews*.

Further, to the extent that Boeing argues in reply that Albalushi fails to state a claim on Count I because of her failure to allege "race-based comments, insults, bullying, or slurs," the Court rejects it.  *See* doc. 14 at 5.  In its memorandum in support of its Partial Motion to Dismiss, Boeing argued that Albalushi's lack of facts pleading comments, insults, slurs, or bullying fails to state a claim only as to Count II.  *See* doc. 10 at 3–4.  Boeing cannot, on reply, allege for the first time that the same lack of facts also fail to state a claim as to Count I.  *See Fish v. United States*, 748 F. App'x 91, 92 n.2 (8th Cir. 2019) (noting that a reply brief is "too late to properly raise a new issue before the district court").  The Court therefore finds that Albalushi sufficiently pleaded facts regarding her membership in a protected class for counts I and II.  *See* doc. 7 at ¶¶ 38–58.

## IV.    Conclusion

Accordingly, the Court denies Boeing's [9] Partial Motion to Dismiss.

So ordered this 27th day of July 2026.

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE